UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE GILES,<br><br>           Plaintiff,<br><br>      v.<br><br>TOM FELKER, et al.,<br><br>           Defendants. | No. 2:11-cv-1825-EFB P<br><br>ORDER AND FINDINGS AND<br>RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C § 1983. Currently pending before the court are two motions to dismiss: one brought solely by defendant Nachiondo and the other brought by defendants Felker, Roche, and Wong. ECF Nos. 30, 36. As discussed below, defendant Nachiondo's motion should be denied and the motion brought by defendants Felker, Roche, and Wong should be denied in part and granted in part.

**I.     The Complaint**

This action was originally filed on July 12, 2011 and proceeds on the Amended Complaint filed on April 10, 2012. ECF Nos. 1, 18. The court found that the complaint stated potentially cognizable claims against defendants Nachiondo, Felker, Roche, and Wong. ECF No. 19.

In the complaint, plaintiff alleges that defendant Nachiondo was a physician who "contracted to provide treatment to inmates" at High Desert State Prison ("HDSP"), where

1

plaintiff was confined at the relevant time. ECF No. 18 at 3. Defendants Felker and Wong were HDSP wardens. *Id.* Defendant Roche was the Chief Medical Officer at HDSP and was responsible for approving medical care there. *Id.* at 4.

From February 24, 2004 through January 31, 2008, defendants Felker and Wong ordered three-to-four lockdowns per year, each lockdown persisting for 30-90 days. *Id.* at 5. Defendants Felker and Wong did not give plaintiff access to out-of-cell exercise during those lockdowns. *Id.*

In December 2005, defendants Felker and Wong abruptly stopped tobacco sales at HDSP. *Id.* at 5-6. They did so while the prison was on an extended lockdown. *Id.* Defendants Felker and Wong did not provide any out-of-cell exercise time during the lockdown, nor did they take steps to ease the effects on inmate smokers of being forced to stop smoking "cold turkey." *Id.* at 6. At the time, plaintiff had been a one-pack-a-day smoker for 25 years and had been buying his cigarettes through the prison canteen since his arrival there in 2004. *Id.*

The lack of exercise and tobacco withdrawal combined to cause health problems for plaintiff. *Id.* He began to see blood in his stool in early 2006, and his bowel movements decreased in frequency. *Id.* at 6-7. Plaintiff sought medical help and was provided medications to treat his "stomach complications." *Id.* at 7. Plaintiff began seeing defendant Nachiondo, an "outside specialist," on July 5, 2006. *Id.*

Defendant Nachiondo performed a colonoscopy on plaintiff on September 26, 2006 "in which several biopsies were taken for pathology testing." *Id.* at 9. Defendant Nachiondo filed a report with the medical department at HDSP on that date stating that he suspected that plaintiff was suffering from "Crohn's disease/colitis." *Id.* However, the pathology results, which came back on September 28, 2006, showed no indication of Crohn's disease or colitis. *Id.*

Plaintiff had a follow-up appointment with defendant Nachiondo on February 6, 2007. *Id.* at 10. Defendant Nachiondo reported to HDSP that plaintiff had been recently diagnosed with Crohn's disease, despite the pathology results from the prior year. *Id.* Plaintiff contends that Nachiondo likely knew that plaintiff did not have Crohn's disease, but submitted a false report so that the California Department of Corrections and Rehabilitation ("CDCR") would pay him to treat plaintiff for that ailment. *Id.* According to the complaint, Nachiondo deliberately placed

plaintiff at risk of harm by prescribing plaintiff "immune suppressant medications he knew was [sic] dangerous if not properly tapered before discontinuing." *Id.* at 10-11. Plaintiff claims that Nachiondo provided "a high potency course of medications for a rather diminutive condition" that likely could have been addressed through adequate exercise. *Id.* at 12-13.

Plaintiff also alleges that beginning on February 7, 2007, defendant Roche ignored Nachiondo's orders that plaintiff receive a "low residue diet." *Id.* at 15. He claims that Roche also interfered with Nachiondo's orders by discontinuing plaintiff's prednisone without tapering it on July 16, 2007. *Id.* at 14. Plaintiff's health had improved up until shortly after the prednisone was discontinued. *Id.* at 15-16.

Plaintiff was admitted to HDSP's Correctional Treatment Clinic ("CTC") on August 7, 2007 and remained there until October 23, 2007 under the direct care of defendant Roche. *Id.* at 14. Roche was a member of the Medical Authorization Review Committee ("MAR"), which reviewed plaintiff's medical condition. *Id.* at 16-17. Roche examined plaintiff at least twice a week during that time. *Id.* at 15. Plaintiff claims that Roche knew within two weeks that plaintiff's condition was deteriorating, but did not change the course of treatment. *Id.* The MAR failed to intervene when it became apparent that plaintiff's condition was deteriorating and instead withheld authorization for plaintiff to be seen at an outside medical service provider. *Id.* at 17. If defendant Roche and the MAR had not delayed plaintiff's receipt of outside care, plaintiff "would not have loss [sic] his colon entirely." *Id.* at 16.

Defendant Nachiondo also examined plaintiff during the time he was in the CTC, on August 22, 2007 and September 10, 2007. *Id.* at 11-12. Nachiondo allegedly should have known on August 22, 2007 that the current course of treatment was not working, because plaintiff presented with the new symptoms of diarrhea, dehydration, weakness, and weight loss. *Id.* Plaintiff claims that he needed "the maximum sixty milligrams of prednisone" but Nachiondo failed to order that dosage in time for it to be effective. *Id.*

Nachiondo's failure to order the proper prednisone dose allegedly caused plaintiff to suffer within a few weeks. *Id.* at 12. Plaintiff claims that Nachiondo examined plaintiff again on September 10, 2007 and was again made aware that the current treatment was not effective. *Id.*

3

Nevertheless, Nachiondo maintained the same course of treatment. *Id.*

Plaintiff demanded a change of treatment because he was suffering and his condition was deteriorating. *Id.* at 8. He was taken to the emergency room and admitted at Renown Regional Medical Center on October 23, 2007. *Id.* Plaintiff alleges that he lost his "entire colon and rectum" as a result of the inadequate care from Roche and Nachiondo and must now use an ileostomy pouch. *Id.* at 7.

Defendant Nachiondo moves to dismiss on the grounds that the court lacks jurisdiction over him (Federal Rule of Civil Procedure 12(b)(2)) and the complaint fails to state a claim (Rule 12(b)(6)).[1] Defendants Felker, Wong, and Roche move to dismiss on the grounds that the action is barred by the applicable statutes of limitation. These defendants also ask the court to dismiss plaintiff's claims for injunctive relief as barred by a pending class action.

**II.    Personal Jurisdiction**

   **A.    Standard**

Individuals have a liberty interest protected by the Due Process Clause in not being subjected to the binding judgments of a forum with which they have no meaningful contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). In addition, a court's exercise of jurisdiction over an out-of-state party must comport with the forum state's "long-arm statute." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). Because California's statute extends the state's jurisdictional reach as far as the bounds of due process, to determine whether an exercise of personal jurisdiction by a court sitting in California is permissible, one need only apply the due process standard. *Id.* (citing Cal. Civ. Proc. Code § 410.10).

A party may therefore move for dismissal of a case by asserting that the court lacks jurisdiction over him. Fed. R. Civ. P. 12(b)(2). The plaintiff, however, rather than the moving party, bears the burden of establishing personal jurisdiction. *Fred Martin Motor*, 374 F.3d at 800.

/////

---

[1] Defendant Nachiondo also initially argued that plaintiff's claims against him are barred by the statute of limitations, but has expressly abandoned that argument. ECF No. 41 at 10.

4

Where the court considers a Rule 12(b)(2) motion based on written materials instead of an evidentiary hearing, the plaintiff can meet her burden by making a prima facie showing of jurisdictional facts. *Id.* In determining whether the plaintiff has met this burden, the court accepts those allegations in the complaint that are not controverted and resolves conflicting affidavits in the plaintiff's favor. *Id.*

A court's exercise of jurisdiction over a nonresident defendant comports with due process when the defendant has sufficient contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Fred Martin Motor*, 374 F.3d at 801. Such so-called "minimum contacts" can be established in either of two ways. First, a plaintiff may demonstrate that the defendant has such continuous, substantial, and systematic contacts with the forum state as to approximate physical presence ("general jurisdiction"). *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). Second, a plaintiff may demonstrate "specific jurisdiction" by showing that the defendant has purposefully availed himself of the privilege of conducting activities within the forum and that the litigation arises out of those activities. *Burger King*, 471 U.S. at 472-73.

**B.     Analysis**

Here, assuming--as Nachiondo argues--that the allegations of the complaint do not show that he had such substantial contacts with California as to subject him to the general jurisdiction of California courts, *see Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) ("The standard for general jurisdiction is high; contacts with a state must approximate physical presence."), the facts alleged in the complaint plainly establish purposeful availment and minimum contacts sufficient to establish specific jurisdiction over him.

Nachiondo also argues that the allegations fail to show the propriety of the exercise of specific jurisdiction. According to Nachiondo, the exercise of jurisdiction by this court would be inappropriate because he is a Nevada resident and all of his contacts with plaintiff occurred in his medical office in Reno, Nevada. Nachiondo contends that the court must focus on the location

/////

5

1    where the services were rendered in determining jurisdiction, citing *Wright v. Yackley*, 459 F.2d
2    287, 289 (9th Cir. 1972).

3    In *Wright*, the plaintiff, while a resident of South Dakota, sought treatment from
4    defendant, a South Dakota doctor. *Id.* at 288. At the defendant's direction, the plaintiff took
5    medications under a prescription permitting unlimited refills. *Id.* The plaintiff then moved to
6    Idaho. *Id.* Arriving at the conclusion that the medications had injured her, the plaintiff sued the
7    defendant in an Idaho court. *Id.*

8    The U.S. Court of Appeals for the Ninth Circuit affirmed the district court's dismissal of
9    the case based on the lack of jurisdiction over the defendant. *Id.* at 288-89. The court made some
10   general observations about how, due to the personal nature of medical care, care that is rendered
11   in one state may carry consequences that are felt in any state in which the patient cares to travel.
12   *Id.* at 289-90. It then determined that the exercise of jurisdiction over a non-resident doctor
13   simply based on the residence of the patient (and the patient's later symptoms occurring, by
14   necessity, in the state of her residence) would not comport with due process. *Id.* at 290.
15   According to the court, "From the very nature of the average doctor's localized practice, there is
16   no systematic or continuing effort on the part of the doctor to provide services which are to be felt
17   in the forum state." *Id.* A doctor does not purposefully avail herself of the benefits of conducting
18   business in a state simply by treating a resident of that state. *Id.* Additionally, the court was wary
19   of subjecting doctors to suit in any state into which their patients may travel, as such a policy
20   might deter doctors from treating non-residents in need of care. *Id.* This holding comports with
21   the U.S. Supreme Court's later determination in *Helicopteros Nacionales de Columbia, S.A. v.*
22   *Hall* that personal jurisdiction over a nonresident defendant cannot be premised on the unilateral
23   activity of another party. 466 U.S. 408, 417 (1984).

24   Here, the facts alleged by plaintiff differ from the facts of *Wright* in important ways.
25   Plaintiff alleges that Nachiondo "contracted to provide treatment to inmates at High Desert [State
26   Prison]." ECF No. 18 at 3. The court takes judicial notice that High Desert State Prison is
27   located in Susanville, California, west of the border between California and Nevada. Reno,
28   where Nachiondo provided treatment to plaintiff, is just east of that border. However, contracting

6

with a major correctional facility located in California to provide medical services is a significant availment to a business opportunity in California. Unlike *Wright*, plaintiff did not seek treatment for himself in Nevada and then, of his own volition, travel to another state and seek to hail the defendant into court there. Instead, plaintiff was taken to see defendant Nachiondo in Reno by California correctional authorities who, according to the complaint, had contracted with Nachiondo for the very purpose of providing medical services to inmates housed in California.

Notably, Nachiondo has not disputed plaintiff's claim that defendant Nachiondo, at the relevant time, contracted with CDCR to provide treatment to California inmates. This fact, along with the proximity of Reno to the California border, brings this case more in line with *Cubbage v. Merchant*, 744 F.2d 665 (9th Cir. 1984) than *Wright*. In *Cubbage*, a California resident sued two Arizona doctors and an Arizona hospital for malpractice in a federal court sitting in California. *Id.* at 666. The defendant doctors practiced at the defendant hospital "in a sparsely populated desert region near the Arizona/California border." *Id.* at 667. The defendants advertised in yellow page directories that were distributed in the nearby California area. *Id.* at 668-69. In addition, the doctors purposefully applied for Medi-Cal numbers, which permitted health care providers to receive reimbursement from the state for services rendered to eligible California residents. *Id.* at 668. In doing so, the doctors invoked the protection of California law. *Id.*

Similarly here, Nachiondo, practicing in a border town, availed himself of the opportunity to treat patients residing on the other side of the border. *See id.* at 670 (noting that defendants "were located near the border of the forum state and thus rendition of services to California residents was not an isolated occurrence.") Assuming the truth of plaintiff's allegation that defendant Nachiondo contracted with California prison authorities to treat California inmates, as the court must at this stage, defendant Nachiondo purposefully directed his activities toward California residents and derived benefit therefrom. *See Burger King*, 471 U.S. at 473-74. *Compare Kimbro v. Miranda*, No. 2:12-cv-2154 MCE KJN P, 2013 U.S. Dist. LEXIS 144891, at *9 & 15 (E.D. Cal. Oct. 4, 2013) (dismissing for lack of personal jurisdiction the claim of an HDSP inmate against a Reno doctor where plaintiff did not allege that defendant contracted with CDCR to treat inmates). Thus, plaintiff has made a prima facie case that defendant Nachiondo

had such "minimum contacts" with California as to support the exercise of this court's jurisdiction over him.  In addition, plaintiff's claims derive from those contacts – had defendant Nachiondo not entered into a contract to provide treatment to California inmates, plaintiff presumably would have been taken elsewhere.

Having established defendant Nachiondo's "minimum contacts" with California from which this case arises, the court must consider these contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).  These factors are: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.  *Id.* at 477.  "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Id.*

The court finds that these factors favor the exercise of jurisdiction in this case.  It is undisputed that Nachiondo works in Reno, Nevada, located just east of the California border.  He has presented no facts from which the court can conclude that litigating in this court would present a burden for him; nor would his involvement in litigation within this forum have been unforeseeable when he contracted with the California prison authorities.  California has an interest in adjudicating plaintiff's claim that defendant Nachiondo, a doctor who (according to plaintiff's allegations) has contracted with California to treat the state's inmates, violated his Eighth Amendment right to be free from deliberately indifferent medical care.  Moreover, it would be inefficient to require plaintiff to litigate his claim against defendant Nachiondo in Nevada and his related claims against defendants Felker, Wong, and Roche here.  Lastly, defendant Nachiondo has articulated no social policy that would be hindered by the court's exercise of jurisdiction.

/////

1  Thus, it is recommended that Nachiondo's motion to dismiss for lack of personal
2  jurisdiction be denied.

### III. Failure to State a Claim

#### A. Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55, 562-63, 570 (2007) (stating that the 12(b)(6) standard that dismissal is warranted if plaintiff can prove no set of facts in support of his claims that would entitle him to relief "has been questioned, criticized, and explained away long enough," and that having "earned its retirement," it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). Thus, the grounds must amount to "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action. *Id.* at 1965. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted). Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

The complaint's factual allegations are accepted as true. *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984). The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). General allegations are presumed to include specific facts necessary to support the claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

The court may disregard allegations contradicted by the complaint's attached exhibits. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.1998). Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir.

1987)). The court may consider matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)). "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *Sprewell*, 266 F.3d at 988.

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

Defendant Nachiondo argues that dismissal is warranted because he is not a "state actor" under § 1983. Defendants Felker, Wong, and Roche argue that dismissal is warranted because the statute of limitations has run on plaintiff's claims against them. Defendants Felker, Wong, and Roche also seek dismissal of plaintiff's injunctive relief claim.

**B.     Analysis**

    **1.     Defendant Nachiondo Is a "State Actor"**

Nachiondo's argument that he was not acting under color of state law is utterly without merit.[2]

This argument is in direct conflict with *West v. Atkins*, 487 U.S. 42, 48 (1988), in which the U.S. Supreme Court held that "a physician employed by [a state] to provide medical services to state prison inmates" acts under color of state law for purposes of § 1983 when performing his duties in treating an inmate. *Id.* at 54-55.

/////

---

[2] To state a claim under § 1983, a plaintiff must allege: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

**2.     The Running of the Statute of Limitations Is Not Apparent**

Defendants Felker, Wong, and Roche argue that plaintiff's claims against them are not timely. State law provides the limitations period for § 1983 suits and related tolling issues. *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009). Such suits are characterized as personal injury actions for statute of limitations purposes, so the court must apply the California limitations rules governing personal injury actions.[3] *Id.* California's limitations period for personal injury actions is two years. Cal. Civ. Proc. Code § 335.1.

The court must also apply California's tolling provisions. California Code of Civil Procedure § 352.1 tolls the limitations period in damages actions for two years where the plaintiff was serving a term of less than life in prison. In addition, the limitations period is equitably tolled during a plaintiff's pursuit of administrative remedies. *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal.4th 88, 100-03 (2008); *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005) ("the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process").

The limitations period begins to run when a claim accrues, a question that is determined by federal law. *Morales v. City of L.A.*, 214 F.3d 1151, 1153-54 (9th Cir. 2000). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). Determination of the date a claim accrued may be complicated by the application of the "discovery rule" and/or the "continuing violation doctrine." The discovery rule delays the date of accrual of a cause of action until the date plaintiff has discovered the existence and cause of his injury. *Davis v. United States*, 642 F.2d 328, 330-31 (9th Cir. 1981) (applying the discovery rule in a medical malpractice

---

[3] Plaintiff argues that the timeliness of this case should be determined under California's limitations period for medical malpractice actions. Cal. Civ. Proc. Code § 340.5 (providing a limitations period of three years from the date of injury or one year from the date the injury is discovered). Courts have concluded, however, that the timeliness of deliberate indifference claims is determined under the standard two-year personal injury limitations period where, as here, there is no state-law malpractice claim. *E.g., Clewis v. Cal. Prison Health Care Servs.*, No. CIV S-09-2120 JAM GGH P, 2012 U.S. Dist. LEXIS 107805, at *12-13 (E.D. Cal. Aug. 1, 2012); *Parlin v. Sodhi*, No.CV 10-6120 VBF (MRW), 2011 U.S. Dist. LEXIS 147397, *9-10 (C.D. Cal. Nov. 17, 2011).

1  case); *Martin v. Woodford*, No. 1:08-cv-00415-LJO-SKO PC, 2010 U.S. Dist. LEXIS 69693, at

2  *7-12 (E.D. Cal. July 13, 2010) (applying the discovery rule in an Eighth Amendment medical

3  care case).  The continuing violation doctrine delays the start of the limitations period to the date

4  of the last in a serious of closely related acts, allowing the plaintiff to recover for acts that

5  occurred prior to the limitations period that were closely related to acts within the limitations

6  period.  *Martin*, 2010 U.S. Dist. LEXIS 69693, at *13-14 (citing *O'Loghlin v. County of Orange*,

7  229 F.3d 871, 875 (9th Cir. 2000)).

8        A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the

9  statute of limitations only when the running of the statute is apparent on the face of the complaint

10 and it appears beyond doubt that the plaintiff can prove no set of facts that would establish that

11 the complaint is timely.  *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir.

12 2010).  The instant action was commenced on July 7, 2011, when plaintiff signed and dated the

13 complaint.  *Douglas*, 567 F.3d at 1107.

14       As to defendants Felker and Wong, plaintiff alleges that they ordered three-to-four lengthy

15 lockdowns per year from February 24, 2004 to January 31, 2008 without providing out-of-cell

16 exercise.  ECF No. 18 at 5.  Plaintiff additionally alleges that these defendants abruptly stopped

17 tobacco sales in December 2005, forcing plaintiff to stop smoking "cold turkey."  *Id.* at 6.  These

18 acts, in combination, began to cause plaintiff to suffer ill effects in his gastro-intestinal tract

19 beginning in early 2006.  *Id.* at 6-7.  These ill health effects, further exacerbated by the allegedly

20 deficient care of defendants Nachiondo and Roche, culminated in the removal of plaintiff's colon

21 and rectum in October 2007.  *Id.* at 7; ECF No. 42-1 at 5.

22       Defendants Felker and Wong argue that plaintiff's claims against them are untimely.

23 According to defendants Felker and Wong, plaintiff had four years from the accrual of his cause

24 of action to sue them (two years from California Code of Civil Procedure § 335.1 and two years

25 from California Code of Civil Procedure § 352.1).  Defendants argue that plaintiff's claims

26 accrued in early 2006, when he alleges that he began to see blood in his stool and his bowel

27 movements decreased in frequency, and thus the complaint, filed in July 2011, is untimely.

28 /////

Defendants Felker and Wong have not addressed the possibility that the limitations period may be longer than four years due to plaintiff's administrative appeals nor have they addressed why the date of accrual should not be determined to be later through application of the discovery rule and/or the continuing violation doctrine. Because it is not apparent on the face of the complaint that the limitations period on plaintiff's claims against defendants Felker and Wong has run and because it does not appear beyond doubt that plaintiff can prove no set of facts that would establish the timeliness of the complaint, the undersigned recommends that the court reject the statute of limitations argument advanced by defendants Felker and Wong at this stage, without prejudice to its renewal in a summary judgment motion.

As to defendant Roche, plaintiff alleges that he ignored an order that plaintiff receive a low residue diet from February 7, 2007 forward, improperly discontinued plaintiff's prednisone without tapering it on July 16, 2007, and failed to properly treat plaintiff between August 7, 2007 and October 23, 2007. The court must reject defendant Roche's limitations argument at this stage as well. First, some of defendant Roche's alleged misconduct occurred within four years of the date of the filing of the complaint. Second, defendant Roche has not addressed the potential impact of plaintiff's administrative exhaustion on the limitations period nor the potential application of the discovery rule and/or continuing violation doctrine to those acts that occurred more than four years prior to filing.

### IV. Plaintiff's Injunctive Relief Claim

Plaintiff's prayer for relief includes, among other things, a request for "injunctive relief to prevent long-term delays in seeking adequate medical attention and long-term suffering and or death" and an order requiring CDCR "to provide a full medical record to every outside health care provider at each examination of inmates." ECF No. 18 at 3. Defendants Felker, Wong, and Roche argue that plaintiff's claim for injunctive relief is barred by the pending class action *Plata v. Brown*, No. 3:01-cv-01351 (N.D. Cal.), which concerns deficient medical care in California prisons.

In *Crawford v. Bell,* the Ninth Circuit held that a district court may properly dismiss portions of an individual suit that are duplicative of a pending class action in which the plaintiff is

a class member. 599 F.2d 890, 892-93 (9th Cir. 1979). The *Plata* class consists of all prisoners in CDCR custody with serious medical needs, except those incarcerated at Pelican Bay State Prison. *Pride v. Correa*, 719 F.3d 1130, 1134 (9th Cir. 2013). As plaintiff is incarcerated at the California Men's Colony (and was incarcerated at HDSP at the relevant time) and alleges he has serious medical needs, he is a member of the *Plata* class.

The Ninth Circuit has recently clarified when the *Crawford* rule bars a request for an injunction concerning medical care pursued by an individual member of the *Plata* class. *Pride v. Correa*, 719 F.3d 1130 (9th Cir. 2013). There, the court concluded that *Plata* does not bar an inmate from seeking "injunctive relief solely on his own behalf for medical care that relates to him alone." *Id.* at 1137. A district court may decline to exercise jurisdiction over a claim seeking systemic injunctive relief related to medical care where the allegations and relief sought are duplicative of *Plata*. *Id.*

To the extent that plaintiff's injunctive relief claims pertain to him alone (i.e., seeking an order that CDCR not delay his own medical treatment, not cause his long-term suffering or death, and provide his medical records to outside providers) they are not barred by *Plata*. To the extent that plaintiff seeks an order applying across the CDCR system, however, plaintiff's requests duplicate *Plata*, because plaintiff essentially claims that such system-wide reforms are necessary to provide a constitutional level of care to California inmates. Accordingly, plaintiff's claims for systemic injunctive relief (i.e., seeking an order that CDCR not delay inmates' medical treatment, not cause inmates' long-term suffering or death, and provide inmate records to outside medical providers) should be dismissed.

**V.    Order and Recommendation**

It is hereby ORDERED that the Clerk of Court randomly assign a United States District Judge to this case.

Further, it is RECOMMENDED that:

1. Defendant Nachiondo's April 1, 2013 motion to dismiss (ECF No. 30) be denied without prejudice; and

/////

14

2. The April 26, 2013 motion to dismiss brought by defendants Felker, Roche, and Wong (ECF No. 36) be granted as to plaintiff's claims for systemic injunctive relief and otherwise denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 4, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE