UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE GILES,<br><br>            Plaintiff,<br><br>    v.<br><br>FELKER, et al.,<br><br>            Defendants. | No. 2:11-cv-1825-WBS-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants move for summary judgment in three separate motions. ECF Nos. 100, 101, 103. Defendants Roche and Nachiondo separately argue that the undisputed facts show that they did not violate plaintiff's constitutional rights. ECF Nos. 100, 103. Defendants Felker and Wong, joined by defendants Roche and Nachiondo, argue that plaintiff has not exhausted his claims against them. ECF Nos. 101, 104, 108. Defendants Felker and Wong also seek modification of the scheduling order to extend the time for them to file a substantive summary judgment motion should the court deny their exhaustion-based motion. ECF No. 102. For the reasons that follow, it is recommended that plaintiff's claims be dismissed without prejudice for failure to exhaust administrative remedies.

/////

/////

**I.     The Complaint**

Plaintiff alleges that defendant Nachiondo was a physician who "contracted to provide treatment to inmates" at High Desert State Prison ("HDSP"), where plaintiff was confined at the relevant time. ECF No. 18 at 3. Defendants Felker and Wong were HDSP wardens. *Id.* Defendant Roche was the Chief Medical Officer at HDSP and was responsible for approving medical care there. *Id.* at 4.

From February 24, 2004 through January 31, 2008, defendants Felker and Wong ordered three-to-four lockdowns per year, each lockdown persisting for 30-90 days. *Id.* at 5. Defendants Felker and Wong did not give plaintiff access to out-of-cell exercise during those lockdowns. *Id.*

In December 2005, defendants Felker and Wong abruptly stopped tobacco sales at HDSP. *Id.* at 5-6. They did so while the prison was on an extended lockdown. *Id.* Defendants Felker and Wong did not provide any out-of-cell exercise time during the lockdown, nor did they take steps to ease the effects on inmate smokers of being forced to stop smoking "cold turkey." *Id.* at 6. At the time, plaintiff had been a one-pack-a-day smoker for 25 years and had been buying his smokes through the prison canteen since his arrival there in 2004. *Id.*

Plaintiff complains that the lack of exercise and tobacco withdrawal combined to cause health problems. *Id.* He claims that he began to see blood in his stool in early 2006, and his bowel movements decreased in frequency. *Id.* at 6-7. He asserts that he sought medical help and was provided medications to treat his "stomach complications." *Id.* at 7. He adds that he began seeing defendant Nachiondo, an "outside specialist," on July 5, 2006. *Id.*

Defendant Nachiondo performed a colonoscopy on plaintiff on September 26, 2006 "in which several biopsies were taken for pathology testing." *Id.* at 9. Defendant Nachiondo filed a report with the medical department at HDSP on that date stating that he suspected that plaintiff was suffering from "Crohn's disease/colitis." *Id.* However, the pathology results, which came back on September 28, 2006, showed no indication of Crohn's disease or colitis. *Id.*

Plaintiff had a follow-up appointment with defendant Nachiondo on February 6, 2007. *Id.* at 10. Defendant Nachiondo reported to HDSP that plaintiff had been recently diagnosed with Crohn's disease, despite the pathology results from the prior year. *Id.* Plaintiff alleges that

Nachiondo likely knew that plaintiff did not have Crohn's disease, but submitted a false report so that the California Department of Corrections and Rehabilitation ("CDCR") would pay him to treat plaintiff for that ailment. *Id.* According to plaintiff, Nachiondo deliberately placed plaintiff at risk of harm by prescribing plaintiff "immune suppressant medications he knew was [sic] dangerous if not properly tapered before discontinuing." *Id.* at 10-11. Plaintiff claims that Nachiondo provided "a high potency course of medications for a rather diminutive condition" that likely could have been addressed through adequate exercise. *Id.* at 12-13.

Plaintiff alleges that beginning on February 7, 2007, defendant Roche ignored Nachiondo's orders that plaintiff receive a "low residue diet." *Id.* at 15. Roche also allegedly interfered with Nachiondo's orders by discontinuing plaintiff's prednisone without tapering it on July 16, 2007. *Id.* at 14. Plaintiff's health had improved up until shortly after the prednisone was discontinued. *Id.* at 15-16.

Plaintiff was admitted to HDSP's Correctional Treatment Clinic ("CTC") on August 7, 2007 and remained there until October 23, 2007 under the direct care of Roche. *Id.* at 14. Roche examined plaintiff at least twice a week during that time. *Id.* at 15. Roche allegedly knew within two weeks that plaintiff's condition was deteriorating, but did not change the course of treatment. *Id.* Roche was a member of the Medical Authorization Review Committee ("MAR"), which reviewed plaintiff's medical condition. *Id.* at 16-17. Plaintiff contends that the MAR failed to intervene when it became apparent that plaintiff's condition was deteriorating and instead withheld authorization for plaintiff to be seen at an outside medical service provider. *Id.* at 17. Plaintiff alleges that if Roche and the MAR had not delayed plaintiff's receipt of outside care, plaintiff "would not have loss [sic] his colon entirely." *Id.* at 16.

Nachiondo also examined plaintiff during the time he was in the CTC, on August 22, 2007 and September 10, 2007. *Id.* at 11-12. Nachiondo allegedly should have known on August 22, 2007 that the current course of treatment was not working, because plaintiff presented with the new symptoms of diarrhea, dehydration, weakness, and weight loss. *Id.* Plaintiff needed "the maximum sixty milligrams of prednisone." *Id.* But Nachiondo allegedly failed to order that dosage in time for it to be effective. *Id.*

3

Plaintiff claims that Nachiondo's failure to order the proper prednisone dose caused plaintiff to suffer within a few weeks. *Id.* at 12. Nachiondo examined plaintiff again on September 10, 2007 and was again made aware that the current treatment was not effective. *Id.* Nevertheless, according to plaintiff, Nachiondo maintained the same course of treatment. *Id.*

Plaintiff demanded a change of treatment because he was suffering and his condition was deteriorating. *Id.* at 8. He was taken to the emergency room and admitted at Renown Regional Medical Center on October 23, 2007. *Id.* Plaintiff lost his "entire colon and rectum" as a result of the inadequate care from defendants Roche and Nachiondo and must now use an ileostomy pouch. *Id.* at 7.

## II. General Summary Judgment Principles

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets

its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element

////

5

of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Concurrent with the motions for summary judgment, defendants advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF Nos. 100-1, 101-1, 103-2; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v.*

*Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### III. Analysis

Defendants Wong and Felker, joined by Nachiondo and Roche, argue that plaintiff has not exhausted any of the claims in the complaint and that the claims must therefore be dismissed. The court agrees for the reasons stated below.

### A. Exhaustion Principles

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions [under section 1983 of this title] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" subject to the exhaustion requirement have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2); *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only provide the level of detail required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (the purpose of the exhaustion requirement is to give officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case").

Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation (CDCR Form 602), which instructs the inmate to describe the problem and outline the action requested. Title 15 of the California Code of Regulations, § 3084.2 provides further instructions. The grievance process, as defined by the regulations, has three levels of review to address an inmate's claims, subject to certain exceptions. *See Cal. Code Regs*. tit. 15, § 3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. *Id*. § 3084.1(b).

/////

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). For a remedy to be "available," there must be the "possibility of some relief . . . ." *Booth*, 532 U.S. at 738. Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 216 (2007). To bear this burden:

> a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case . . . . With regard to the latter category of evidence, information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

*Brown*, 422 F.3d at 936-37 (citations omitted). Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).

If under the Rule 56 summary judgment standard, the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120, overruled on other grounds by *Albino*, 747 F.3d 1162.

### B. **Plaintiff's Claims**

Plaintiff alleges that: (1) Nachiondo intentionally misdiagnosed plaintiff with Crohn's disease in late 2006 in order to secure remuneration from CDCR for plaintiff's treatment and somehow mis-prescribed prednisone; (2) Roche interfered with Nachiondo's prescribed treatment

and failed to provide plaintiff with adequate and timely care between August 7, 2007 and October 23, 2007; and (3) Felker and Wong denied plaintiff adequate out-of-cell exercise between February 24, 2004 and January 31, 2008 and further denied plaintiff adequate treatment for nicotine withdrawal.

Exhaustion as to each claim is addressed in turn below.

### i. **Claim against Nachiondo**

Plaintiff claims that Nachiondo violated his Eighth Amendment rights when he intentionally misdiagnosed plaintiff with Crohn's disease in late 2006 in order to secure remuneration from CDCR for plaintiff's treatment and when mis-prescribed prednisone. Defendants Felker and Wong have produced evidence showing a single administrative appeal was filed by plaintiff concerning his allegations against defendant Nachiondo. In that appeal, Log No. SAC HC 11013997, plaintiff's allegations were summarized: "Your CDCR 602-HC indicated you were seeking monetary compensation due to medical negligence at High Desert State Prison. You were misdiagnosed and treated for Crohn's disease when you actually suffered from a chemical imbalance due to the discontinuation of the medication prednisone and failure to properly restart the required dose. The misdiagnosis prevented clinicians from diagnosing you properly which caused your colon and rectum to be ruined and lost." ECF No. 101-4 at 26. Plaintiff filed the appeal on November 22, 2010 (*id.* at 30) and received a final determination at the third level of review on November 21, 2011 (*id.* at 26).

Log No. SAC HC 11013997 was not finally exhausted until after plaintiff filed the complaint in this action on July 12, 2011. ECF No. 101-4 at 26; ECF No. 1. Plaintiff's initial complaint in this action included his claim that defendant Nachiondo had violated his constitutional rights by misdiagnosing him with Crohn's disease. ECF No. 1 at 6. Even assuming that Log No. SAC HC 11013997 sufficed to exhaust plaintiff's claim against defendant

/////
/////
/////
/////

9

Nachiondo, plaintiff was required to exhaust that claim *before* he raised it in this case. *Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006); *McKinney v. Carey*, 311 F.3d 1198, 1999-1201 (9th Cir. 2002).[1]

Plaintiff identifies an "appeal for a medical transfer" filed on June 6, 2006 that he believes should additionally be considered in determining whether the issues raised in the complaint were properly exhausted. ECF No. 119 at 6-7, 27-28. But this appeal predated plaintiff's interactions with defendant Nachiondo and, accordingly, makes no mention of Nachiondo or his allegedly wrong diagnosis of Crohn's disease. *Id.* at 27. Plaintiff described the appeal issue as a request to be transferred to the Los Angeles area to be closer to his family due to his "health conditions" and because "my diagnosis of pancreatitis is not being properly treated." *Id.* The appeal could not apprise prison officials of Nachiondo's allegedly wrongful conduct at issue here (which had yet to occur) and does not suffice to exhaust that claim.

It appears from the opposition that plaintiff may believe that a letter he sent to the Controlled Correspondence and Litigation Management Unit, Division of Correctional Health Care Services in 2008 complaining about his medical treatment is somehow relevant to the exhaustion question. *Id.* at 43-44 (discussing plaintiff's desire for a single cell and a specific surgical intervention). This correspondence did not concern plaintiff's instant claims against Nachiondo and thus could not serve to exhaust them.

Defendants have shown that plaintiff did not exhaust his claim against defendant Nachiondo before filing a claim against him in this action for mis-diagnosing his abdominal condition. Plaintiff's evidence does not show pre-suit exhaustion of the claim nor does plaintiff

---

[1] Years after its decisions in *Vaden* and *McKinney*, the Ninth Circuit held that a plaintiff could include in an amended complaint new claims that were not exhausted when the suit was first brought but were exhausted prior to the filing of the amended complaint. *Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014). *Cano* did not overrule *Vaden* or *McKinney* and, accordingly, district courts have interpreted these cases together to mean that only *new* claims may be exhausted after suit and then be added to an amended complaint, but that the plaintiff may not exhaust claims raised in the original complaint after filing and then seek to cure the failure to exhaust by filing an amended complaint. *E.g.*, *O'Neal v. Peterson*, No. 2:13-cv-1054 KJN P, 2015 U.S. Dist. LEXIS 31331, at *16-17 (E.D. Cal. Mar. 13, 2015); *Ricks v. Doe*, No. 1:10-cv-02256-LJO-SKO, 2015 U.S. Dist. LEXIS 18890, at *10-13 (E.D. Cal. Feb. 17, 2015).

1  provide a reason why he should be excused from the exhaustion requirement. Accordingly, this
2  claim must be dismissed without prejudice for failure to exhaust.

### ii. **Claim against Roche**

Plaintiff claims that defendant Roche interfered with Nachiondo's prescribed treatment and failed to provide plaintiff with adequate and timely care between August 7, 2007 and October 23, 2007. Again, the evidence produced by defendants Felker and Wong show one relevant appeal filed by plaintiff, Log No. SAC HC 11013997, which was not finally exhausted until after plaintiff filed the original complaint in this case. The original complaint contained plaintiff's claims against defendant Roche. ECF No. 1 at 7-11. Plaintiff has not produced any evidence showing pre-suit exhaustion or argued that he should be excused from the exhaustion requirement for some reason. Thus, even assuming that Log No. SAC HC 11013997 would have served to exhaust plaintiff's claims against Roche, it was not properly exhausted prior to plaintiff raising his claims against Roche in this action.

Nor could the letter he sent to the Controlled Correspondence and Litigation Management Unit, Division of Correctional Health Care Services in 2008 serve to exhaust plaintiff's claims against Roche. *Id.* at 43-44 (discussing plaintiff's desire for a single cell and a specific surgical intervention). Leaving aside plaintiff's mistaken assertion that such a letter could exhaust a claim, the letter did not concern the allegations plaintiff levels against Roche herein. Because plaintiff did not exhaust his claims against Roche before bringing them here, the claims must be dismissed without prejudice for failure to exhaust.

### iii. **Claims against Felker and Wong**

Plaintiff claims that defendants Felker and Wong denied plaintiff adequate out-of-cell exercise between February 24, 2004 and January 31, 2008 and further denied plaintiff adequate treatment for nicotine withdrawal. As noted previously, Felker and Wong have produced evidence that plaintiff pursued one grievance potentially relevant to these claims: Log No. HDPS-C-05-1650, filed on May 22, 2005. ECF No. 101-5 at 9-20. Plaintiff described his grievance there as:

/////

> On 5-08-05 all inmates were released for normal program activities except Black and White inmates. Pursuant to title 15 3004(a) and 3004(C); (A) stating "Inmates and Parolees have the right to be treated respectfully, impartially, and fairly by all employees." (C) states, "Inmates, parolees, and employees will not subject other persons to any form of discrimination because of race, religion, nationality, sex, political belief, age, or physical or mental handicap.["] Lockdowns based on race is a form of discrimination because of one's race and is unfair treatment in plain error constituting cruel and unusual punishment.

*Id.* at 14. Plaintiff stated further:

> Discrimination because of race must stop. Inmates should be allowed to exchange blankets that have not been exchange[d] in 2005. Inmates should be allowed to be in the same enjoyment and participation as all inmates. White and Black inmates should be allowed time to fully clean cells with mops and cleanser.

*Id.* Nowhere in the grievance did plaintiff state that he was being deprived of necessary out-of-cell exercise or treatment for nicotine withdrawal. Indeed, defendants did not cease tobacco sales as alleged by plaintiff until later in 2005, and plaintiff concedes "that he did not alert prison officials of any details about his nicotine withdraws [sic] suffered." ECF No. 119 at 12.

In response to the denial of his grievance at the first level, plaintiff did claim that the lockdowns resulted in unconstitutional deprivation of out-of-cell exercise. ECF No. 101-5 at 17, 18. However, a prisoner does not exhaust administrative remedies when he includes new issues or persons from one level of review to another. Cal. Code Regs. tit. 15, § 3084.1; *see also Sapp v. Kimbrell*, 623 F.3d 813, 825 (9th Cir. 2010) (concluding that it was proper for prison officials to "decline[] to consider a complaint about a [prisoner's] eye condition that he raised for the first time in a second-level appeal about medical care for a skin condition."). Plaintiff's inclusion of the out-of-cell exercise issue at later levels of the grievance process therefore did not serve to exhaust that issue.

Plaintiff again points to Log No. HDSP-C-06-01544, submitted June 29, 2006, in which he requested transfer to a facility closer to Los Angeles based on medical hardship. ECF No. 119 at 27-42. Plaintiff described the problem as a wish to be closer to family due to his medical conditions and improper treatment of his pancreatitis. *Id.* at 27. Plaintiff did not state that he was being deprived of adequate out-of-cell exercise or that he had been denied treatment for nicotine withdrawal. While plaintiff did state in requesting further levels of review that he was "not

12

receiving proper fresh air," (*id.* at 35) and that constant lockdowns interfered with his "ability to get fresh air, exercise, sunshine, etc." (*id.* at 41), the inclusion of these claims at subsequent levels of the appeals process does not serve to exhaust them. Cal. Code Regs. tit. 15, § 3084.1; *see also Sapp,* 623 F.3d at 825 (9th Cir. 2010). Moreover, the appeal was never properly exhausted – the evidence shows that the appeal was rejected as untimely at the third level of review. *Id.* at 42.

And, again, the letter plaintiff sent to the Controlled Correspondence and Litigation Management Unit, Division of Correctional Health Care Services in 2008 complaining about his medical treatment is irrelevant to the exhaustion question here. *Id.* at 43-44 (discussing plaintiff's desire for a single cell and a specific surgical intervention). Even assuming that this letter, instead of the established grievance process, could have exhausted the claims, the correspondence bears no relation to plaintiff's claims against Felker and Wong regarding the alleged denial of adequate exercise and treatment for nicotine withdrawal.

In sum, after reviewing the evidence submitted by the parties in the light most favorable to plaintiff, a reasonable factfinder could conclude from this evidence that plaintiff properly exhausted his claims against defendants before he initiated this suit. Accordingly, plaintiff's claims should be dismissed.

### C. Motion to Modify the Schedule

Defendants Felker and Wong additional request that the court modify the scheduling order to permit them additional time to submit a motion for summary judgment regarding the merits of plaintiff's claims should their motion on exhaustion grounds be denied. In light of the above recommended disposition as to plaintiff's failure to exhaust, the court need not reach the propriety of modifying the schedule at this time. Should the recommendation be adopted, the request will be moot.

### IV. The Merits

Defendants Roche and Nachiondo also seek summary judgment on the merits of plaintiff's claims. Because the plaintiff has failed to exhaust his claims against them before bringing them in this suit, the court need not reach the merits of those claims.

/////

### V. Conclusion and Recommendation

Accordingly, it is hereby ORDERED that the July 20, 2015 motion to modify the schedule filed by defendants Felker and Wong (ECF No. 102) is denied without prejudice.

Further, it is RECOMMENDED that:

1. The July 20, 2015 motion for summary judgment filed by defendants Felker and Wong (ECF No. 101) and joined by defendants Roche and Nachiondo be granted and plaintiff's complaint be dismissed without prejudice for failure to exhaust administrative remedies.
2. Defendants' motions for summary judgment on the merits (ECF Nos. 100, 103) be denied without prejudice as moot.
3. The Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 25, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE